MARY MAGDALENE HILLERY *vs.* THOMAS HUNGIVILLE HILLERY.

Middlesex. December 9, 1960. — April 4, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, CUTTER, & KIRK, JJ.

*Divorce,* Alimony, Support of child. *Evidence,* Presumptions and burden of proof.

In a divorce proceeding in which the libellant sought alimony and maintenance for children awarded to her custody, mere evasiveness and failure to furnish true information on the part of the libellee with respect to his income could not of itself be the basis of a finding that his income exceeded the income affirmatively shown by the evidence. [374–375]

In a divorce proceeding in which the libellant seeks alimony and maintenance for children awarded to her custody, the burden of showing the amount which the libellee can afford to pay is on the libellant. [375]

A provision of a divorce decree of a Probate Court ordering the libellee husband to pay the libellant a certain sum per week for alimony and maintenance of two minor children awarded to her custody was plainly wrong on reported evidence disclosing that the libellee's principal income was a salary from a small family business corporation in a net weekly amount substantially less than the weekly sum ordered to be paid to the libellant, and that his income from other assets was inconsequential, although his standard of living was enhanced appreciably by gifts from his father and sister and by gifts or loans from the corporation. [375]

LIBEL FOR DIVORCE, filed in the Probate Court for the county of Middlesex on October 16, 1959.

The case was heard by *Leggat, J.*

*John F. Lombard,* for the libellee.

*Walter F. Levis,* for the libellant.

SPALDING, J. On April 21, 1960, Mary M. Hillery obtained a decree nisi granting her a divorce from her hus-

band, Thomas H. Hillery, on the ground of cruel and abusive treatment. Under the decree the custody of the two minor children was given to the wife, and the husband was ordered to pay to his wife $125 per week as alimony and a further sum of $125 per week for the maintenance of the children. From that part of the decree ordering these payments, the husband appealed. The judge made findings of material facts and the evidence is reported. It is our duty to examine the evidence and to decide the case on our own judgment. *Rubinstein* v. *Rubinstein,* 319 Mass. 568. *Whitney* v. *Whitney,* 325 Mass. 28.

The parties were married in 1952. The libellee, aged thirty-two, is a member of the bar but has virtually no practice.[1] He is treasurer and secretary of M. H. Hillery Company, Inc. (hereinafter called the corporation), which operates a small trucking business with eleven employees. The corporation is a family affair which is operated by the libellee, his father, and his sister, Paula, who is its president.[2] The libellee and his sister hold the stock of the corporation as trustees under the will of their mother for the benefit of their father for life; upon his death the trust is to terminate and the stock then goes to the libellee and his sister in equal shares. The libellee is paid a salary of $12,000 a year by the corporation and this is his principal source of income. The net sum received by the libellee after tax and other deductions is $9,876 or $189.93 a week. The payments, however, ordered by the judge amount to $250 a week or $13,000 a year.

The question then for decision is whether the judge could properly have found that the libellee's resources were sufficiently in excess of his admitted salary as to justify the payments which were ordered. The general principles to be applied in cases of this sort are well settled. The decision is largely within the discretion of the judge, "after a consideration of all the facts, including the needs of the

[1] His gross income as a lawyer amounted to no more than $100 for the year 1959.

[2] Paula's annual salary was $2,820 in 1958. Subsequently it was increased to $11,000. The libellee's father used to be very active in the business but now he acts merely as a consultant for which he receives $1,200 a year.

wife and the children, the financial worth of the husband, the station in life of the parties, and their mode of living.'' *Whitney* v. *Whitney,* 325 Mass. 28, 30. *Coe* v. *Coe,* 313 Mass. 232, 235–236. *Wilson* v. *Wilson,* 329 Mass. 208, 211.

In the court below the libellant attempted to show that the libellee's income was much in excess of his $12,000 salary. The evidence clearly supports the conclusion that the libellee's standard of living was enhanced appreciably by gifts from his father and sister and by the corporation's payment of certain of his personal expenses. But the libellee's ability to pay cannot be based on either of these factors. Although the gifts from the family were substantial, they were for the most part for current expenses.[1] The evidence fails to show that these payments appreciably added to the libellee's net worth. Since they could be discontinued at any time, they cannot be considered in determining how much the libellee can afford to pay.

The evidence also shows that the corporation paid certain living expenses of the libellee and his family. The libellant and the libellee each had the use of an automobile which, including operating expenses, was provided by the corporation. Although the evidence is conflicting, it could have been found that the corporation paid, without any arrangement for reimbursement, many of the libellee's fuel and telephone bills. The libellee dined out frequently, often with guests, at restaurants and night clubs where substantial amounts were spent for food and liquor. Often the expenses incurred for this were paid for by the corporation. There was also evidence that in addition to his salary the libellee obtained $25 a week in cash from the corporation for expense money which he apparently used as he saw fit.

The advances made by the corporation were either gifts or loans. It is not clear from the evidence which they were intended to be. If they were gifts, there is serious doubt as to their legality. Officers of a corporation cannot use

---

[1] In 1959 they included $700 from the libellee's father for the libellant and her then only child to take a trip to Florida; $5 a week deposited by the father in a credit union account of the libellee. There were also frequent cash gifts in small amounts from the libellee's father.

corporate funds for such purposes. At all events the gifts, if such they were, could be discontinued at any time. If, on the other hand, these payments were loans they did not enhance the libellee's net worth and they could likewise be discontinued at any time. Thus these payments, however they may be classed, did not constitute additional resources which would afford the basis for the challenged orders.

There were, to be sure, financial resources other than his salary. From investments the libellee received about $200 a year. He owned with the libellant, as tenants by the entirety, the house in which they lived. This, the judge found, had an equity of $8,000. They also owned, as tenants by the entirety, a parcel of commercial property, but this was operated at a loss. The equity in this, according to the judge, was $8,000.[1] He owns shares of an investment trust worth approximately $1,500. The libellee and his sister, as indicated above, own a remainder interest in the stock of the corporation which has a present worth of approximately $16,000. These assets when considered with the libellee's salary do not afford the basis for the orders in question amounting in the aggregate to $13,000 a year.

We have not overlooked certain findings of the judge which seem to have influenced him to a considerable extent in reaching his conclusions. The records of the corporation were kept in a very irregular and unusual manner. Certain information concerning the corporation's affairs was furnished once a week to one Sommers, a part time bookkeeper who kept the records at his home. Such records as he made were entirely on information furnished to him by the libellee, his sister and his father. Apparently no records were kept at the corporation's place of business, and the records kept by Sommers were very sketchy. The judge concluded that "the libellee, his father and sister were reluctant or unwilling to furnish me with any information relative to the income of the libellee"; that "neither Sommers nor the libellee gave any assistance in the matter

---

[1] As a result of the divorce these properties would be owned by the libellant and the libellee as tenants in common. *Bernatavicius* v. *Bernatavicius*, 259 Mass. 486.

of determining the income of the libellee''; that it was ''obvious that both the libellee and Sommers were . . . evasive''; and that the ''libellee did not furnish the true information which he had in his possession.'' These conclusions cannot be said to be plainly wrong. On the contrary they seem eminently justified even on the printed record where the atmosphere of the trial is lacking.

The trial of a case is not to be converted into a game of hide and seek and the judge very properly expressed his disapproval of the evidence given by the libellee and his witnesses. But this evasiveness or untruthfulness cannot itself be the basis of a finding that the libellee's income was substantially in excess of what was actually shown. Conduct of that sort by a party may be treated as in the nature of an admission (*D'Arcangelo* v. *Tartar*, 265 Mass. 350, 352), but it cannot totally take the place of affirmative evidence. ''An implied admission . . . [conveying real estate to a relative without consideration a few days prior to the commencement of the action] may turn the scale where the evidence is conflicting. But it forms an insufficient foundation for the erection of an entire case by mere inference without other evidence.'' *Credit Serv. Corp.* v. *Barker*, 308 Mass. 476, 481.

The libellant had the burden of showing what the libellee could afford to pay. A decree ordering alimony or support must rest on something more than disbelief of the libellee and his witnesses. In *Klar* v. *Klar*, 322 Mass. 59, relied on by the libellant, there was a more solid foundation for the order than here.

We are of opinion that the decree in so far as it orders payments by the libellee of $250 a week is not supported by the evidence and is plainly wrong. We do not undertake to say what the order should be. That is a matter that should be determined by the trial judge in the light of the principles set forth in this opinion.

*Decree reversed.*
*Case to stand for further hearing*
*on the question of alimony and*
*maintenance.*