VIRGINIA L. BRADY vs. JAMES P. BRADY.

Middlesex.  January 10, 1980. — April 25, 1980.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, LIACOS, & ABRAMS, JJ.

*Divorce,* Alimony.  *Department of Public Welfare.  Probate Court,* Jurisdiction.  *Statute,* Construction.

Under G. L. c. 18, § 21, a Probate Court judge in a divorce proceeding properly ordered a husband to pay alimony for his wife, a recipient of public assistance, and maintenance for their child, directly to the Department of Public Welfare, which was not a party to the proceeding; the department was not required to institute legal proceedings to obtain subrogation rights under the provision that "[t]he department shall be subrogated to the rights to support and maintenance of any welfare recipient to the extent of any payments made by this department to such recipient." [483-486]

An order by a Probate Court judge in a divorce proceeding that the husband pay a weekly amount as alimony for his wife, a recipient of public assistance, and for maintenance of their child, any unpaid amounts to accumulate and to be applied quasi in rem against the husband's interest in the marital home, was invalid [486]; G. L. c. 208, § 36, was inapplicable to create such a lien [486-487]; the lien imposed would contravene public policy of home ownership by welfare recipients [487]; the order was not based on the statutory factors set forth in c. 208, § 34, as appearing in St. 1974, c. 565 [487-488]; and appropriate consideration was not given to the agreement of the parties fixing alimony and child support, which should be upheld if "fair and reasonable" [488-489].

LIBEL for divorce filed in the Probate Court for the county of Middlesex on October 23, 1975.

The case was heard by *Martin, J.*

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Donald K. Stern,* Assistant Attorney General, for the Department of Public Welfare, intervener.

*Gerald Tutor* for James P. Brady.

*John F. Corbett* for the plaintiff.

LIACOS, J. This case is before the court for further appellate review of an alimony and child support order contained in a judgment of divorce nisi. We summarize the facts [1] and the proceedings below. James P. Brady (husband) and Virginia L. Brady (wife) were married on September 28, 1968, and their one child was born on August 2, 1969. On March 30, 1972, they purchased a house in West Groton, Massachusetts, for $22,900. They made a down payment of $4,750 and executed a mortgage for $18,300. On October 20, 1972, the husband moved out of the home. Three years later the wife filed in the Probate Court for Middlesex County a complaint for divorce alleging desertion. She was granted a judgment of divorce nisi on April 14, 1976, in an uncontested proceeding.

At the time of the divorce proceeding the wife had been receiving public assistance for two and one-half years. She received $57 a week through the Aid to Families with Dependent Children (AFDC) program, and was earning $54.91 through part-time employment. The husband at that time was receiving $58 a week unemployment compensation and was paying $10 a week to the Department of Public Welfare (department) for support of his wife and child.

The Probate Court judge accepted a stipulation of the parties concerning custody and visitation of the minor child. He rejected that part of the stipulation under which the husband agreed to convey his interest in the marital home to the wife in lieu of alimony. Instead, the judge ordered the husband to pay $63 a week to the court to be forwarded to the department as alimony and child support. Any amounts not paid were to accumulate and attach quasi in rem against the husband's interest in the marital domicil. The judge further ordered that "when, as, and if said real

---

[1] No stenographic record was made of the Probate Court proceeding, and the judge filed no findings of fact. The parties and the judge submitted a "Statement of the Case for Appeal" pursuant to Mass. R.A.P 8 (d), 365 Mass. 849 (1974), from which we draw the facts presented in this opinion.

estate is sold, mortgaged or otherwise disposed of, the Welfare Department shall be reimbursed from the proceeds of such disposition."

Both parties objected to the order, and each appealed to the Appeals Court. Both parties appealed from that part of the judgment which rejected the stipulation concerning alimony and child support, and instead created a lien on the marital home in favor of the department. In addition, the husband appealed on the ground that the support order in excess of his income was unreasonable. The Appeals Court affirmed so much of the judgment as awarded divorce to the wife, and reversed the balance of the judgment, holding, inter alia, that the judge exceeded his authority in establishing a lien in favor of the department. The Appeals Court further ordered that the case be remanded to the Probate Court for further proceedings, including a new hearing on the issues of alimony and child support. *Brady* v. *Brady,* 8 Mass. App. Ct. 43 (1979).

On July 23, 1979, the Appeals Court allowed the department's motion to intervene for the purpose of requesting further appellate review. This court granted the department's application for further appellate review on September 27, 1979.

Before reaching the question of the validity of the lien, we first consider whether the Probate Court judge properly ordered the husband to pay alimony and child support directly to the department pursuant to G. L. c. 18, § 21, where the department was not a party to the proceedings. The Appeals Court decided that "[u]nder the provisions of [G. L. c. 18, § 21], it is incumbent upon the Department to initiate the procedures by which it shall obtain subrogation rights. See *Leach* v. *Leach,* 4 Mass. App. Ct. 812 (1976)." *Brady* v. *Brady,* 8 Mass. App. Ct. 43, 45-46 (1979).[2] We disagree for the reasons stated herein.

---

[2] The department admits that the Appeals Court decision could be read narrowly so that it would not prohibit support orders payable to the department without the department's intervention, but the department argues that the decision requires further clarification lest it be read too broadly. We agree that such clarification is necessary.

General Laws c. 18, § 21, provides that "[t]he department shall be subrogated to the rights to support and maintenance of any welfare recipient to the extent of any
payments made by this department to such recipient." That
provision goes on to outline various procedures by which the
department may enforce its subrogation rights.[3] The husband argues in his brief that under this provision, the department's means of enforcing its subrogation rights are
restricted to either bringing a contempt action to enforce an
existing support order or instituting a nonsupport action.
The wife similarly argues in her brief that under G. L.
c. 18, § 21, the department cannot be granted a judgment
in its favor, unless it proceeds in proper judicial fashion as a
plaintiff before the court pursuant to the rules of procedure.[4]
Her position apparently rests on the department's failure to
intervene as a plaintiff in this action.

We agree with the department's position that the enforcement mechanisms set forth in G. L. c. 18, § 21, are not
the exclusive means by which the department may obtain
subrogation rights. The first sentence of G. L. c. 18, § 21,
sets forth the department's subrogation rights. These rights
can be taken into account when the Probate Court judge
enters support and maintenance orders.[5] We reach this re-

---

[3] General Laws c. 18, § 21, inserted by St. 1969, c. 885, § 12, and in effect at the time of the entry of the judgment nisi, provided in part: "If no
probate court order is outstanding, the department may, in its own name,
initiate nonsupport proceedings in the appropriate probate court. The
department shall institute contempt proceedings under the provisions of
section thirty-four A of chapter two hundred and fifteen in the name of
the recipient in the event that any order of support made by the probate
court concerning any recipient under a petition for separate support or a
libel for divorce has not been complied with. If no probate court order is
outstanding, the department shall in its own name apply for a complaint
and initiate nonsupport proceedings in the appropriate district court under
section one of chapter two hundred and seventy-three." The statute was
amended by St. 1977, c. 925, in ways not material to this decision.

[4] The husband and wife apparently reconsidered their positions prior to
oral argument before this court, at which time they did not contest the
power of the judge to order direct payment to the department.

[5] In this case, the judge's recognition of the department's subrogation
rights in his order was particularly appropriate in light of the agreement

sult by applying familiar principles of statutory construction. There is, of course, a "maxim of statutory construction which suggests that a statutory expression of one thing is an implied exclusion of other things omitted from the statute." *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Auth.*, 368 Mass. 425, 432 (1975), and cases cited. However, as we noted in *Harborview*, "the maxim is not to be followed where to do so would frustrate the general beneficial purposes of the legislation. *Simmons* v. *County of Suffolk*, 230 Mass. 236, 237-238 (1918). Sands, Sutherland Statutory Construction, § 47.25 (4th ed. 1973)." *Id.* Moreover, G. L. c. 18, § 21, should be construed in harmony with Federal law. *Carroll* v. *Acting Director of Pub. Welfare of Cambridge*, 355 Mass. 182, 187-188 (1969).

The Federal statutes governing Federal reimbursement to the State for certain child support collection expenses require that child support payments be made to the State and not directly to the family. 42 U.S.C. § 654(5) (1976). Thus, if a Probate Court judge entering a child support order were not authorized under G. L. c. 18, § 21, to order direct payment to the Department of Public Welfare, the State could forfeit Federal reimbursement for certain child support collection expenses. Federal law further provides that AFDC recipients must assign their support rights to the State as a condition of AFDC eligibility.[6] 106 Code Mass. Regs. § 303.360 (1978). Support rights so assigned to the State "constitute an obligation owed to [the] State by the individual responsible for providing such support." 42 U.S.C.

---

submitted by the parties which stipulated that "[t]he defendant shall pay as support for said minor child, such amounts as are ordered by the Probate Court, or the Welfare Department, as the case may be . . . ." The wife, in her brief, acknowledges that the agreement "recognizes that there are subrogation rights legally available to the Department of Welfare, pursuant to G. L. c. 18, § 21."

[6] Although the record indicates that the wife is an AFDC recipient, it does not reflect whether she has made an assignment of her rights to the department. Inasmuch as such an assignment is a requirement of AFDC eligibility, we assume that an assignment was made in the normal course of establishing eligibility.

§ 656(a) (1976). By virtue of this assignment of rights, the department, and not the spouse maintaining custody of the child, is entitled to receive payment.

Other provisions of Massachusetts law, as well, support our interpretation of G. L. c. 18, § 21. For example, G. L. c. 118, § 2, as amended through St. 1974, c. 623, § 3, provides in pertinent part that "[t]he amount of [AFDC] assistance shall not be reduced by the amount of any payment for support due from an absent parent through a court order or otherwise, but said payment from the absent parent shall be made to the department in accordance with section twenty-seven of chapter thirty." If a Probate Court judge were not authorized to order direct payment to the department in the absence of the department's intervention pursuant to G. L. c. 18, § 21, and were, instead, bound to order payment to the spouse maintaining custody of the child, the order would effectively be without force. Notwithstanding the order, the absent spouse would be required by law to make child support payments directly to the department. We do not believe that the Legislature intended this anomalous result.[7]

Our interpretation of G. L. c. 18, § 21, is consistent with sound public policy. The subrogation provision of G. L. c. 18, § 21, protects the public from the burden of assuming the support obligations of an absent spouse who is able to pay. The department asserts that its staff and operating budget would be overburdened if it were required to institute legal proceedings each time it was entitled to enforce its subrogation rights. Recipients of public assistance are also benefited by an order of direct payment to the department. The recipient continues to receive benefits from the depart-

---

[7] We recognize that the State and Federal statutory provisions cited herein in support of our interpretation of G. L. c. 18, § 21, refer only to support of a minor child under the AFDC program. General Laws c. 18, § 21, by its terms, encompasses "the rights to support and maintenance of any welfare recipient," which presumably includes alimony. The parties raise no argument that distinct treatment should be afforded a "welfare recipient" as opposed to an AFDC parent.

ment despite nonpayment by the absent spouse. The supported spouse and child are relieved from involvement in the collecting process. Requiring the department to institute legal proceedings each time it sought to enforce its subrogation rights would frustrate the beneficial purposes of the legislation.

We now consider the validity of the probate judge's imposition of a lien in favor of the department on the husband's interest in the marital home. The judge relied on the case *Blitzer* v. *Blitzer*, 361 Mass. 780 (1972), as authority for imposing the lien. We agree with the decision of the Appeals Court in the case at bar that such reliance was misplaced. *Brady* v. *Brady*, 8 Mass. App. Ct. 43, 46 (1979). *Blitzer* involved a divorce proceeding by a wife against a nonresident husband. We held that the judge had no jurisdiction to enter a personal decree against a nonresident not subject to the jurisdiction of the Probate Court; we held, however, the judge did have power, by a decree quasi in rem, to subject the husband's interest in Massachusetts real estate to a valid claim by the wife for alimony and support of their children.[8] The case at bar is distinguishable from *Blitzer* in the following respect: In *Blitzer*, the lien was in favor of the wife who had requested a lien; the husband had not agreed, as in the instant case, to convey to the wife his interest in the real estate.

The alternative theories asserted by the department in support of the lien imposed in this case are without merit.[9]

___

[8] The Legislature has, since *Blitzer*, mitigated the jurisdictional problems in divorce cases by enacting G. L. c. 223A, § 3 (g). In *Wood* v. *Wood*, 369 Mass. 665 (1976), this court held that a Probate Court had personal jurisdiction over a nonresident defendant in divorce proceedings pursuant to G. L. c. 223A, § 3 (g), and jurisdiction based on attachment of the defendant's interest in real estate pursuant to G. L. c. 223, §§ 42, 62-70.

[9] General Laws c. 208, § 36, is not properly relied on as authority for the creation of the lien in this case. General Laws c. 208, § 36, as amended through St. 1979, c. 522, § 1, provides that "[w]hen alimony or an annual allowance is adjudged for the spouse or children, the court may require sufficient security for its payment according to the judgment." The wife here has made no request for security, and furthermore, the husband has agreed to make an outright conveyance of his interest in the marital home to the wife.

Furthermore, such a lien contravenes public policy. The department's own regulations reflect a policy in favor of allowing public assistance recipients to own their homes. The pertinent language of 106 Code Mass. Regs. § 303.220 (1978) (formerly Rule 8, Rules and Regulations for the Administration of the Aid to Dependent Children Law, Massachusetts Department of Public Welfare, Rules and Regulations [1971]), provides: "The ownership of real property occupied as a home by the dependent child, his or her father or mother does not affect eligibility." The judge's imposition of a lien in favor of the department, in lieu of an order directing the husband to convey his interest in the marital home to the wife, effectively denied the wife her right to own the marital home.[10] Under the terms of the order, since it is virtually impossible for the husband to pay $63 a week on an income of $58 a week, the arrearage will inevitably continue to accrue against the husband's interest in the home.[11] See *Ainslie* v. *Ainslie,* 6 Mass. App. Ct. 692, 695-696 (1978).

The judge's order in the case at bar also fails under G. L. c. 208, § 34, as appearing in St. 1974, c. 565. That provision mandates that the probate judge consider the following factors in awarding alimony: "the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income." He may also consider "the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respec-

---

[10] The order apparently provided for the wife's continued occupation of the home.

[11] Moreover, it is unclear from the record exactly what interest the husband has in the marital home. Title to the home prior to the divorce was in the husband and wife as tenants by the entirety. The wife asserts that she paid the mortgage and upkeep of the home since its acquisition (which was the year of the husband's departure). The husband agrees that, in light of his departure seven months after the home was purchased, his interest is minimal.

tive estates" and the contribution of each of the parties as a homemaker to the family unit. *Bianco* v. *Bianco,* 371 Mass. 420, 422-423 (1976). This court has further held that "it is important that a judge's findings clearly indicate that he has weighed all the statutory considerations. . . . Thus the record must show beyond doubt that the judge considered all the factors set forth by the statute. Otherwise the objectives of the statute will not be satisfied." *Id.* In *Moran* v. *Moran,* 5 Mass. App. Ct. 787 (1977), the absence of findings clearly indicating that the judge weighed all the statutory factors constituted reversible error. A report of the evidence was held to be insufficient. *Id.*

In the case at bar, the judge failed to make findings to indicate that he considered the statutory factors set forth in G. L. c. 208, § 34. Moreover, the facts as disclosed in the statement of the case for appeal indicate that he did not base his order on the statutory factors. For example, the judge ordered the husband to pay $63 a week for alimony and child support where his income was only $58 a week. In *Hillery* v. *Hillery,* 342 Mass. 371 (1961), this court held that an order directing the husband to pay $250 a week where his income was only $189.93 a week was "not supported by the evidence and . . . plainly wrong." *Id.* at 375. Furthermore, in *Hillery, supra,* there was evidence in the record that the husband had resources in excess of his admitted salary. There is no such evidence in the record in the case at bar. In fact, the record indicates that the source of the husband's $58 a week income is unemployment compensation benefits.[12]

Finally, we note that in addition to considering the statutory factors, the judge should give appropriate consideration to the agreement of the parties fixing alimony and child support. While, of course, he is not bound by the agree-

---

[12] The husband argues that, absent a voluntary agreement, unemployment compensation benefits are exempt from support orders by virtue of G. L. c. 151A, § 36. Since there was such a voluntary agreement here, we need not consider this argument. But see *Utley* v. *Utley,* 355 Mass. 469 (1969).

ment, he should uphold it if it is "fair and reasonable" in the circumstances. *Knox* v. *Remick,* 371 Mass. 433, 436 (1976).

So much of the judgment as awards a divorce to the wife is affirmed. The balance of the judgment is reversed, and the case is remanded to the Probate Court for further proceedings consistent with this opinion, including a hearing on the issues of alimony and child support.

*So ordered.*