THE GLOBE NEWSPAPER COMPANY, INC., petitioner.

Norfolk. September 6, 2011. - December 13, 2011.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Inquest. Impoundment. Statute,* Construction. *Common Law. Public Records. Privacy. Supreme Judicial Court,* Superintendence of inferior courts.

Discussion of the law governing the impoundment of inquest transcripts and reports. [115-118]

Statement that under G. L. c. 38, § 10, courts retain inherent authority to impound inquest transcripts when justice so requires even after the filing of a certificate by a district attorney that would otherwise make the inquest transcript presumptively public. [118-119]

Statement that an inquest report shall be impounded until the inquest transcript presumptively becomes a public document under G. L. c. 38, § 10, and that inquest reports and transcripts, once they have presumptively become public documents, may only be impounded on a finding of good cause shown. [119-123]

Statement that the impoundment of inquest transcripts and reports shall extend for a period of ten calendar days after the filing of the required notice or certificate by a district attorney under G. L. c. 38, § 10; further, after the conclusion of such a ten-day period, the report or transcript shall be available for public inspection in the absence of an impoundment order or a judicial order pending adjudication of a motion to impound. [123-124]

In the circumstances of an inquest proceeding, the denial by a Superior Court judge of a newspaper's motion to inspect and copy the inquest report and transcript, made after the filing of the inquest report and transcript in the Superior Court, and the return of an indictment charging a criminal defendant with murder in the first degree, was required to be vacated and remanded. [124]

Statement that an order allowing or denying a motion to impound an inquest report or transcript, or to vacate or modify an order of impoundment, may be appealed to a single justice of the Appeals Court. [124-125]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on June 30, 2010.

The case was reported by *Gants*, J.

*Jonathan M. Albano* for the petitioner.

*Larry R. Tipton*, Committee for Public Counsel Services (*Peter M. Onek*, Committee for Public Counsel Services, with him) for the intervener.

*Natalie S. Monroe*, Assistant Attorney General (*Todd M. Blume*, Assistant Attorney General, with her) for the Attorney General.

*Christopher T. Bavitz*, for Citizen Media Law Project & others, amici curiae, submitted a brief.

GANTS, J. After the report and the transcript of an inquest was filed in the Superior Court, and a grand jury returned an indictment charging Amy Bishop with the murder in the first degree of her brother, Seth, the Globe Newspaper Company, Inc. (Globe), filed a motion in the Superior Court to inspect and copy the inquest report and the transcript of the inquest proceedings. Following a hearing, a judge denied the Globe's motion and ordered the inquest report and transcript to be impounded until further order of the court. The Globe brought this petition in the county court under G. L. c. 211, § 3, challenging the judge's denial of its motion, claiming that the judge erred in concluding that the impoundment of inquest reports and transcripts was governed by the common-law principles set forth in *Kennedy* v. *Justice of the District Court of Dukes County*, 356 Mass. 367 (1969) (*Kennedy*), rather than by the terms of G. L. c. 38, § 10, the statute addressing inquest reports that was enacted after the *Kennedy* decision. A single justice reserved and reported the matter to the full court. We remand the case to the single justice with instructions to vacate the judge's denial of the motion to inspect and copy the inquest report and transcript, and to remand the case to the Superior Court for further proceedings in accordance with this opinion.[1]

*Background.* The relevant facts are not in dispute. On February 25, 2010, the Norfolk County district attorney announced that he had directed that an inquest be conducted into the 1986 death of Seth Bishop. Two weeks earlier, three faculty members of the University of Alabama were shot to death and three others seriously wounded at a meeting of their academic department. Amy Bishop was charged in connection with those shootings.

A judge in the Quincy Division of the District Court Depart-

[1]We acknowledge the amicus briefs filed by the Attorney General; the Committee for Public Counsel Services (as intervener on behalf of Amy Bishop); and the Citizen Media Law Project; Community Newspaper Holdings, Inc.; Gatehouse Media, Inc.; Massachusetts Newspaper Publishers Association; Metro Corp., doing business as Boston Magazine; and New England Newspaper and Press Association, Inc.

ment conducted the inquest and on May 25, 2010, in accordance with G. L. c. 38, § 10, filed his inquest report, along with the inquest transcript, in the Superior Court, where they were impounded. On June 16, 2010, a Norfolk County grand jury returned an indictment charging Amy Bishop with murder in the first degree in connection with her brother's death. That day, the Globe filed a motion to inspect and copy the inquest report and transcript. A judge in the Superior Court ordered that these inquest documents remain impounded pending resolution of the motion.

A different Superior Court judge held a hearing on the motion on June 17, and the next day denied the motion and directed that the impoundment order remain in force.[2] The judge concluded that the Globe had no constitutional right of access to the inquest transcript or report,[3] and that, under the principles set forth in the *Kennedy* decision, the transcript and report must remain impounded until the completion of Amy Bishop's murder trial in Massachusetts or until the court determines that it is unlikely she will be tried.

On June 30, 2010, the Globe filed its petition under G. L. c. 211, § 3, challenging the judge's decision. The single justice reserved and reported the petition and directed the parties to address in their briefs not only the substantive issues regarding impoundment, but the procedural question "whether there is (or should be) an adequate alternative to G. L. c. 211, § 3, for someone seeking access to impounded inquest material."

*Discussion.* Under G. L. c. 38, § 8, the Attorney General or a district attorney may direct that an inquest into the death of any person be held before a judge in the District Court. A judge's role in an inquest is investigative, not accusatory or adjudicatory. *Kennedy, supra* at 374. An inquest "is not a trial of anyone." *Id.* at 373. Nor is it "part of any criminal proceedings which may ensue." *Id.* at 374. Its purpose is to "aid in the achievement of justice by obtaining information as to whether a crime

---

[2] An attorney for Amy Bishop appeared at the hearing to oppose the motion of the Globe Newspaper Company, Inc. (Globe); the Norfolk County district attorney also appeared, but took no position on the motion.

[3] The Globe on appeal does not claim a constitutional right to inspect the inquest materials. Rather, it relies solely on G. L. c. 38, § 10, and the common-law right of access to documents filed in court.

has been committed." *Id.* After the inquest is conducted, the judge must issue a written report that includes the name of the deceased (if known), "when, where, and by what means the person met his death, . . . all material circumstances attending the death, and the name, if known, of any person whose unlawful act or negligence appears to have contributed" to the death. G. L. c. 38, § 10. The judge must then file the report and a transcript of the inquest proceedings in the Superior Court for the county where the inquest was held. *Id.*

Our decision in *Kennedy* arose from the inquest conducted into the death of Mary Jo Kopechne in 1969, when an automobile in which she was riding that was driven by Senator Edward M. Kennedy went off a bridge on Chappaquiddick Island. *Kennedy, supra* at 368. The District Court judge who conducted the inquest decided to exclude Kennedy and his attorney from the inquest, but to permit the attendance of "legitimate and accredited members of the press, television, radio and other news media." *Id.* at 369. At that time, the statute governing inquests was silent as to who may attend the proceedings and who, if anyone, may have access to the inquest report and transcript after it is filed. See G. L. (Ter. Ed.) c. 38, § 12, repealed by St. 1992, c. 368, § 2. To fill this void and resolve the various questions raised on appeal regarding the inquest procedure, the court declared six "general principles" regarding the conduct of inquests and the dissemination of inquest reports and transcripts "to protect the integrity, the investigatory character, and the effectiveness of inquests." *Kennedy, supra* at 377. The last three of these general principles were:

> "(4) Upon the completion of the inquest, the inquest documents shall remain impounded and the inquest judge shall transmit his report and a transcript of the evidence received by him to the appropriate clerk of the Superior Court. (5) While these papers remain impounded, access to the report and transcript shall be afforded only to the Attorney General, the appropriate District Attorney, and to counsel for any person who has been stated in the report as having actual or possible responsibility for the decedent's death, except that any witness at the inquest shall be permitted, through counsel or directly, to check the accuracy of

the transcript of his own testimony and to file with the inquest judge and the appropriate clerk of the Superior Court any suggested corrections. (6) (a) If the District Attorney shall file with the appropriate clerk of the Superior Court a written certificate that no prosecution is proposed, or (b) if it shall appear that an indictment has been sought and not returned, or (c) if trial of the persons named in the report as responsible for the decedent's death shall have been completed, or (d) if a judge of the Superior Court shall determine that no criminal trial is likely, then upon order of the Superior Court, the report and transcript shall be opened forthwith to public examination."

*Kennedy, supra* at 377-378. Under these principles, while the inquest report and transcript are impounded until any criminal case arising from the inquest is resolved by a nolle prosequi, no bill, dismissal, or trial, "all facts concerning the inquiry must eventually be published, and at the earliest possible time consistent with fairness to all parties." *Id.* at 378-379.

In 1992, however, the Legislature enacted a new statute governing inquest procedures. General Laws c. 38, § 10, requires the inquest judge to file the inquest report and the transcript of proceedings in the Superior Court, and declares that "[s]aid transcript shall be impounded until the district attorney files a certificate with the superior court indicating that he will not present the case to a grand jury, or files notice with the superior court that the grand jury has returned a true bill or a no bill after presentment by the district attorney."

In interpreting a statute, we presume that when the Legislature enacts a law it is aware of the statutory and common law that governed the matter in which it legislates. See *Commonwealth v. Colturi*, 448 Mass. 809, 812 (2007); *Commonwealth v. Callahan*, 440 Mass. 436, 441 (2003).[4] We also construe a statute "as written, in keeping with its plain meaning, so as to give effect

[4]This presumption is especially strong here with respect to the enactment of G. L. c. 38, § 10. The common law governing the impoundment of an inquest report and transcript was articulated in *Kennedy v. Justice of the Dist. Court of Dukes County*, 356 Mass. 367 (1979) (*Kennedy*), which concerned perhaps the most publicized inquest in the modern history of this Commonwealth. See *id.* at 370 ("Because the petitioner Kennedy is a prominent political figure, all events relating to the accident, including the scheduled inquest, have been given extensive coverage by the local, national, and international news media").

to each word." *Stop & Shop Supermarket Co.* v. *Urstadt Biddle Props., Inc.*, 433 Mass 285, 289 (2001).

"Unless there is a violation of a constitutional guaranty, the Legislature may modify or abrogate common law practices" regarding public access to judicial records. *New Bedford Standard-Times Publ. Co.* v. *Clerk of the Third Dist. Court of Bristol*, 377 Mass. 404, 410 (1979). But we do not interpret a statute to modify or abrogate an area traditionally guided by the common law, such as public access to judicial records, unless the intent to do so is clear. See *Riley* v. *Davison Constr. Co.*, 381 Mass. 432, 438 (1980); *Pineo* v. *White*, 320 Mass. 487, 491 (1946).

Under the plain meaning of the language in § 10, an inquest transcript must be filed in the Superior Court, and remains impounded until the district attorney in the county where the death occurs files a certificate asserting that the case will not be presented to a grand jury, or files notice that a grand jury has returned an indictment or a no bill. By implication, the transcript is no longer automatically impounded after one of these events occurs. See *Newspapers of New England, Inc.* v. *Clerk-Magistrate of the Ware Div. of the Dist. Court Dep't*, 403 Mass. 628, 631 (1988), cert. denied, 490 U.S. 1066 (1989) (*Newspapers of New England*) (where statute directs that, on return of search warrant, "the affidavit shall be attached to it and shall be filed therewith, and it shall not be a public document until the warrant is returned," statute provides, "in effect, that, once the warrant and affidavit have been returned to the court, they become public documents"). Section 10 thus abrogates, in part, one of the general principles set forth in the *Kennedy* decision by eliminating the required impoundment of the transcript until any criminal case arising from the inquest is resolved by a nolle prosequi, no bill, dismissal, or trial. Instead, on the filing of the certificate, the inquest transcript becomes presumptively public.

We reject the Globe's argument that, because the Legislature declared in G. L. c. 38, § 10, that the inquest transcript "shall be impounded" until one of various events occur, we should infer that it intended to remove a court's inherent authority to impound after the occurrence of one of those events "when justice so requires." See *Newspapers of New England, supra* at

631-632, quoting *H.S. Gere & Sons* v. *Frey*, 400 Mass. 326, 329 (1987). "[T]he maxim of negative implication — that the express inclusion of one thing implies the exclusion of another — 'requires great caution in its application.'" *Halebian* v. *Berv*, 457 Mass. 620, 628 (2010), quoting 2A N.J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 47.25, at 429 (7th ed. 2007). Such an interpretation would suggest that the Legislature intended every inquest transcript to be available to the public on indictment regardless of the content of the transcript or its potential effect on the ability of a person under indictment to obtain a fair trial. We see no evidence that the Legislature intended this result. See *Halebian* v. *Berv*, *supra*, quoting 2A N.J. Singer & J.D. Shambie Singer, *supra* at § 47. 25, at 433-435 (maxim of negative implication disregarded where its application would frustrate legislative intent). See also *Brady* v. *Brady*, 380 Mass. 480, 484 (1980), quoting *Simmons* v. *County of Suffolk*, 230 Mass. 236, 237-238 (1918) ("the maxim is not to be followed where to do so would frustrate the general beneficial purposes of the legislation").

We also reject the argument that, because the Legislature required the impoundment of an inquest transcript until one of the specified events occurs, but did not require impoundment of the inquest report, we should infer that it intended that the report not be impounded after being filed. Because the Legislature only modifies the common law where it clearly intends to do so, the consequence of its silence as to the impoundment of the inquest report in G. L. c. 38, § 10, is that our common law governs public access to the inquest report after it is filed. To interpret the silence in § 10 to mean that the report must never be impounded on filing would frustrate the apparent legislative purpose in impounding the transcript, because the report may include a summary of the evidence contained in the transcript, the names of any persons the inquest judge determines contributed to the decedent's death by their negligence or unlawful acts, and the analysis of the judge who conducted the inquest.

Because § 10 modified the common law as to the impoundment of inquest transcripts, the judge incorrectly concluded that, under the general principles set forth in *Kennedy*, the transcript automatically remains impounded until the conclusion of any

trial of Amy Bishop. The transcript should have been made presumptively public on the grand jury's indictment of Amy Bishop, subject to our common-law rules on impoundment. Because § 10 left to the common law the impoundment of an inquest report after an indictment is returned, and because the judge correctly understood the principles we set forth in *Kennedy* to be controlling authority as to the common law, the judge reasonably applied those principles in her decision as to the inquest report. We now, however, revise those principles to conform to the evolving general principles in our common law regarding public access to court records, and to ensure that the same principles govern the impoundment of the inquest transcript and report.

Under our common law, once a document is filed in court, even if the document sets forth the results of an investigation, it is a public record unless a statute or court rule directs its impoundment. See *Boston Herald, Inc.* v. *Sharpe*, 432 Mass. 593, 605-608 (2000); *Newspapers of New England, supra.* While a document filed in court is presumed to be public, a court retains the authority to impound it and thereby deny public access where justice requires. *Id.* See *Boston Herald, Inc.* v. *Sharpe, supra* at 604, quoting *George W. Prescott Publ. Co.* v. *Register of Probate for Norfolk County*, 395 Mass. 274, 277 (1985) (court has "inherent equitable power to impound its files in a case and to deny public inspection of them . . . when justice so requires").

In civil cases, impoundment is governed by the Uniform Rules of Impoundment Procedure, whose rule 7 provides that a court document may be ordered impounded for "good cause shown." Rule 7 of the Uniform Rules of Impoundment Procedure at 903 (LexisNexis 2011-2012). In determining whether good cause has been shown, a judge "shall consider all relevant factors, including, but not limited to, the nature of the parties and the controversy, the type of information and privacy interests involved, the extent of community interest, and the reason(s) for the request." *Id.* See *Newspapers of New England, supra* at 632, quoting *H.S. Gere & Sons* v. *Frey, supra* ("judge must balance the privacy issues against the 'general principle of publicity' "). The burden of demonstrating the existence of

good cause always remains with the party urging impoundment or continued impoundment. See *Republican Co.* v. *Appeals Court,* 442 Mass. 218, 225 (2004). Where good cause has been shown, "a judge is required to tailor the scope of the impoundment order so that it does not exceed the need for impoundment." *Boston Herald, Inc.* v. *Sharpe, supra* at 605; *Newspapers of New England, supra* at 638.

Although the uniform rules do not claim to govern impoundment in criminal cases, see Rule 1 of the Uniform Rules of Impoundment Procedure, *supra* at 901 ("rules govern impoundment in civil proceedings"), we have applied the good cause standard to the impoundment of documents filed in criminal cases, and required a comparable balancing. *Republican Co.* v. *Appeals Court, supra* at 223 & 223 n.8 ("While the Uniform Rules technically do not apply to criminal proceedings, a similar balancing is necessary with regard to the impoundment of court records in all proceedings, civil or criminal"). The interests balanced in criminal cases, however, likely differ from those in civil cases, because the public's right to access is balanced not simply against an interest in privacy, but against a defendant's right to a fair trial, which potentially may be at risk from prejudicial pretrial publicity. See *Boston Herald, Inc.* v. *Sharpe, supra* at 608-609. See also *Newspapers of New England, supra* at 632-633, quoting *Gannett Co.* v. *DePasquale,* 443 U.S. 368, 378 (1979) ("To safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity"). The likelihood of pretrial publicity arising from the release of court documents, however, "does not . . . necessarily trump" the presumption of public access. *Boston Herald, Inc.* v. *Sharpe, supra* at 609. "[I]mpoundment is always the exception to the rule, and the power to deny public access to judicial records is to be 'strictly construed in favor of the general principle of publicity.' " *Republican Co.* v. *Appeals Court, supra* at 223, quoting *Commonwealth* v. *Blondin,* 324 Mass. 564, 571 (1949), cert. denied, 339 U.S. 984 (1950).

An inquest proceeding is investigative, and is neither criminal nor civil, although its findings may result in an indictment being issued or a wrongful death case being filed. See *Kennedy,*

*supra* at 373-374. By its very nature, the subject of an inquest is properly a matter of public interest: a person has been killed in circumstances sufficiently suspicious as to warrant the Attorney General or a district attorney to require the death be investigated by a judge in an evidentiary hearing. Where, as here, an indictment has been returned, the inquest report and transcript are analogous to an affidavit in support of a search warrant in that both are likely to contain details of the investigation that resulted in the indictment (although the inquest report and transcript are likely to provide far greater detail), both may contain information that may not be admitted or admissible at trial, and both need not provide evidence sufficient to support a finding of guilt beyond a reasonable doubt. After we decided *Kennedy*, we held that search warrant affidavits are public documents that may only be impounded on a finding of good cause shown. See *Republican Co. v. Appeals Court, supra* at 226-227; *Newspapers of New England, supra* at 633-634. Where a district attorney has filed a notice that the grand jury have returned an indictment, we now apply the same standard to inquest reports and transcripts, and no longer adhere to the principle articulated in *Kennedy* that, where an indictment issues, the inquest report and transcript must remain impounded until the completion of the criminal trial or until a judge determines that no criminal trial is likely.

The "good cause shown" standard reflects our recognition that a ruling regarding impoundment requires a judge to consider and balance the relevant factors that apply to a particular case. See, e.g., *Newspapers of New England, supra* at 633-634 (good cause for impoundment of search warrant affidavit where judge's findings relied on "the nature of the community; the prearrest, investigatory nature of the information contained in the sixteen-page affidavit; the multiplicity of sources for the information contained in the affidavit; that some of the information may be suppressible or inadmissible at trial and that a warrant need only be supported by a showing of probable cause"). While the "good cause shown" standard may at times result in the impoundment of all or some of the inquest report and transcript until the completion of the criminal trial based on the factual circumstances in a case, we now hold that such impoundment is not

always required as a matter of "general principle[]." See *Kennedy, supra* at 377-378.

We set forth under the common law, however, a rule that an inquest report shall be impounded until the transcript presumptively becomes a public document under G. L. c. 38, § 10. We recognize that the Legislature in § 10 made only the transcript subject to statutory impoundment, but we do not interpret this omission to reflect an intent that the inquest report be presumptively public during the time period the transcript is statutorily impounded. Rather, the impoundment of the inquest report during this time period is necessary to fulfil the legislative purpose in the statutory impoundment of the transcript, because the report will contain the relevant evidence in the transcript and may contain the conclusions of the judge regarding the criminal responsibility of one or more persons. The latter may prove more prejudicial to defendants than inquest transcripts and may pose a greater risk of affecting the integrity or efficacy of the criminal investigation.

We recognize that a practical problem arises from our holding that an inquest report or transcript filed in court that is not impounded under G. L. c. 38, § 10, or a common-law rule is presumptively a public document unless impounded for "good cause shown." The persons who may have the greatest interest in impounding an inquest report or treatment are the family of the decedent, whose interests in privacy may be compromised, and those identified by the inquest judge as being responsible for the death, whose right to a fair trial may be at risk. The impoundment of the transcript under G. L. c. 38, § 10, and the impoundment of the report under common-law rule ends when the district attorney files a certificate with the Superior Court declaring that the case will not be presented to a grand jury or files notice in the Superior Court that the grand jury have returned an indictment or a no bill. The district attorney is not required to give advance notice of the filing of the certificate or notice to the interested persons. By the time they learn of the filing of the certificate or notice and move for impoundment, it may for all practical purposes be too late if the media have learned of it first and obtained the filed documents. To obviate this dilemma, we exercise our superintendence authority to require the extended

impoundment of the inquest transcript and report for a period of ten calendar days after the filing of the required notice or certificate by a district attorney under § 10. At the conclusion of this ten-day period, the report or transcript shall be available for public inspection in the absence of an impoundment order or a judicial order pending adjudication of a motion to impound.

Applying our new standard to the inquest report and transcript at issue in this case, the denial of the motion to inspect and copy the inquest report and transcript must be vacated because, as to the transcript, the judge failed to recognize the effect of G. L. c. 38, § 10, and, as to the report, the judge rested on the principle in *Kennedy* that we now replace with the rule that the report becomes a presumptively public document when the transcript becomes a presumptively public document. On remand, the judge will conduct further proceedings in accordance with this opinion, with the proviso that the inquest report and transcript shall continue to be impounded until at least ten calendar days after the issuance of the rescript. After the issuance of the rescript, the defendant, the Commonwealth, the decedent's immediate family, or another interested party shall have ten calendar days to move in the criminal case in the Superior Court to impound the inquest report and transcript for "good cause shown." If no such motion is filed, the report and transcript shall be made available to the public. If such a motion is filed, the report and transcript shall continue to be impounded temporarily until the adjudication of the motion or further order of the judge.

Finally, we address whether, in the future, a petition under G. L. c. 211, § 3, shall continue to be the only means to obtain review of the denial or allowance of a motion to impound an inquest report or transcript, or to vacate or modify an order of impoundment. In civil cases, under Rule 12 of the Uniform Rules on Impoundment Procedure at 905 (LexisNexis 2011-2012), an order impounding or refusing to impound documents filed in court may be appealed to a single justice of the Appeals Court. See *Commonwealth v. Silva*, 448 Mass. 701, 705 (2007). In criminal cases, we have declared that the "[p]ractice regarding orders of impoundment entered in criminal proceedings should hew as closely as possible to the protocol established by the uniform rules," and require that appellate review of impound-

ment orders conform to the uniform rules. *Id.*, quoting *Republican Co.* v. *Appeals Court*, 442 Mass. 218, 227 n.14 (2004). We conclude that in the future the practice regarding orders impounding or refusing to impound an inquest report or transcript should also "hew as closely as possible to the protocol established by the uniform rules," and that, as in the uniform rules, such orders may be appealed to a single justice of the Appeals Court.[5]

*Conclusion.* The case is remanded to the county court. The single justice is directed to vacate the judge's denial of the motion to inspect and copy the inquest report and transcript and to remand the case to the Superior Court for further proceedings in accordance with this opinion. The inquest report and transcript shall continue to be impounded until at least ten calendar days after the issuance of the rescript.

*So ordered.*

---

[5]Where, as here, an indictment has been returned, a motion to impound an inquest report or transcript, or to vacate or modify an impoundment order, may be filed in the criminal case, even if the moving party is not a party to the criminal case. See *Commonwealth* v. *Silva*, 448 Mass. 701, 704-705 (2007); *Republican Co.* v. *Appeals Court*, 442 Mass. 218, 227 n.14 (2004). Where a nonparty seeks access to impounded documents, we require the nonparty to give notice to the Attorney General, who will then have an opportunity to be heard, as well as to the parties in the case. *Commonwealth* v. *Silva*, *supra* at 705-706. Where no indictment has been returned and there is no ongoing proceeding that would allow for the filing of such a motion, the party seeking relief may proceed by filing a civil action in the court where the inquest report and transcript is filed. See *id.* at 704; *Republican Co.* v. *Appeals Court*, *supra*; *Ottaway Newspapers, Inc.* v. *Appeals Court*, 372 Mass. 539, 551 (1979). The civil action should name the clerk of court in his or her official capacity, the Attorney General and district attorney, the person or persons identified by the Attorney General as targets of the inquest, and "interested persons," as defined in G. L. c. 38, § 8, as putative defendants. See *Commonwealth* v. *Silva*, *supra*; *Republican Co.* v. *Appeals Court*, *supra*; *Ottaway Newspapers, Inc.* v. *Appeals Court*, *supra*.