NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13334

COMMONWEALTH  vs.  J.F.


Plymouth.     February 8, 2023. - May 5, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt,
& Georges, JJ.


Sealing.  Criminal Records.  Constitutional Law, Access to
    criminal records.  Practice, Criminal, Nolle prosequi,
    Record.



Indictments found and returned in the Superior Court
Department on February 28, 2014.

A petition to seal the record, filed on August 27, 2021,
was heard by Brian A. Davis, J.

The Supreme Judicial Court granted an application for
direct appellate review.


Patrick Levin, Committee for Public Counsel Services, for
the defendant.
Arne Hantson, Assistant District Attorney, for the
Commonwealth.
The following submitted briefs for amici curiae:
Alyssa Golden, Ann Maurer, Elizabeth Connor, & Leigh
Woodruff for Community Legal Aid.
Mason A. Kortz, Tamara S. Wolfson, & Paul M. Kominers for
Upturn, Inc.
Pauline Quirion for Greater Boston Legal Services &
another.

Chinh H. Pham for Boston Bar Association.

CYPHER, J.  On March 10, 2014, the defendant, J.F., was arraigned on two counts of rape while armed with a firearm, G. L. c. 265, § 22; one count of armed and masked robbery, G. L. c. 265, § 17; one count of armed kidnapping with sexual assault, G. L. c. 265, § 26; one count of assault with intent to rape, G. L. c. 265, § 24; and one count of carrying a firearm without a license, G. L. c. 269, § 10 (a).  In December 2015, after a jury trial, he was acquitted on one count of rape while armed, assault with intent to rape, and carrying a firearm without a license.[1]  The jury deadlocked on the remaining three counts, resulting in the declaration of a mistrial.  Subsequently, in March 2018, after determining that the alleged victim was unable to testify at a retrial of those counts due to a relapse in her substance use disorder, the Commonwealth filed a nolle prosequi. Consequently, the defendant suffered no convictions resulting from the charges.

On August 27, 2021, the defendant filed a petition pursuant to G. L. c. 276, § 100C (§ 100C), opposed by the Commonwealth,

---

[1] The trial judge granted the defendant's motion for a required finding of not guilty as to the assault with intent to rape and carrying a firearm charges, and on so much of the rape, robbery, and kidnapping counts alleging the involvement of a firearm.  The jury found the defendant not guilty on the first rape count.

to seal his criminal record as to both the counts on which he was acquitted and the counts for which a nolle prosequi was filed. After a hearing, a judge denied the defendant's petition in writing. The defendant appealed. On appeal, the defendant argues that the plain language of § 100C requires the sealing of records in cases ending in findings of not guilty, no probable cause, or a no bill by a grand jury, unless the defendant objects to such sealing. He asserts that this court's holding in Commonwealth v. Pon, 469 Mass. 296 (2014), resolves any concern surrounding a right of public access under the First Amendment to the United States Constitution. He further argues that the judge abused his discretion in denying the petition with respect to the counts that were nol prossed because he misapplied the "good cause" standard, committing errors of fact and judgment in weighing the factors relevant to his decision.

For the reasons articulated infra, we hold that, consistent with Pon, a closed case that ends in an acquittal, a no bill from a grand jury, or a finding of no probable cause by the court is not a record subject to a First Amendment presumption of access. We further hold that the Legislature clearly abrogated the common-law presumption of access with respect to these records by its plain language in § 100C, first par. Regarding the counts in which the Commonwealth entered a nolle prosequi, we conclude that the judge abused his discretion when

weighing the relevant interests and factors.  Therefore, we remand the case for further proceedings consistent with this opinion.[2]

Background.  On February 28, 2014, a grand jury returned six indictments against the defendant, charging him with two counts of aggravated rape, one count of armed and masked robbery, one count of armed kidnapping with sexual assault, one count of assault with intent to rape, and one count of unlawful possession of a firearm.  These charges stemmed from allegations that the defendant, who knew the alleged victim, entered her car while masked, told her that he had a gun, and drove her to multiple automated teller machines attempting to have her withdraw cash from her bank account.  After the assailant was unable to procure cash due to a lack of funds in the victim's account, he drove her to a parking lot, raped her, and fled.

On December 9, 2015, a jury was empanelled, and trial began.  On December 16, the trial judge allowed the defendant's motion for required findings of not guilty on the charges of assault with intent to rape and unlawful possession of a

---

[2] We recognize the amicus briefs submitted by Greater Boston Legal Services and the Union of Minority Neighborhoods; Upturn, Inc.; and Community Legal Aid; and the amicus letter submitted by the Boston Bar Association.

firearm.[3]  On that same day, the jury acquitted the defendant on the first count of aggravated rape.  The jury were deadlocked as to the remaining three charges.

The case was continued for the scheduling of a new trial, and the defendant's bail was reduced.  In addition to multiple continuances by agreement, the Commonwealth advanced and continued pretrial conferences and the trial date on several occasions.  On April 4, 2017, a judge found the alleged victim unavailable for purposes of trial.  The Commonwealth moved to present the previous testimony of the unavailable witness, the alleged victim, in the second trial.  That motion was denied.  On July 10, the defendant filed a motion for production of the alleged victim's psychiatric treatment records, which was allowed.  The case was continued to November 27 for trial.  The parties later jointly requested that the trial date be rescheduled.  On March 21, 2018, the Commonwealth filed a nolle prosequi as to the remaining three counts:  the remaining rape count, robbery, and kidnapping with sexual assault.

---

[3] The docket indicates that on April 4, 2017, the parties agreed that the trial judge reduced the aggravated portion of the remaining rape count and ordered the firearm provision removed from the robbery count in accordance with his decision on the required findings of not guilty.

On August 27, 2021, the defendant filed a petition to seal his record in connection with the case.[4]  The docket indicates that the case was continued to October 18 for a "[first] stage motion to seal," where the defendant's presence was waived.  On October 18, the matter was taken under advisement, and the Commonwealth filed its opposition on October 20.  On January 6, 2022, the judge scheduled a hearing for "[s]tage [two] motion to seal," but the hearing was continued due to the absence of an interpreter for the defendant.

After another continuance for COVID-19 reasons, the hearing was held on February 9, 2022.  At the hearing, the parties and the judge discussed Pon at length.  The judge indicated his belief that Pon requires "a higher standard" for cases ending in not guilty verdicts:  "the defendant must demonstrate that the value of sealing clearly outweighs the constitutionally-based value of the record remaining open to society."[5]

For the counts in which a nolle prosequi entered, the judge stated that the "defendant must establish that good cause exists for sealing, but it's a lessened burden on the defendant, and

---

[4] According to the defendant's affidavit in support of his petition to seal his criminal record, the only other incident on his record is a charge of operating a motor vehicle with a suspended license, which was dismissed on the payment of court costs in 2012.

[5] The judge indicated that this standard appeared in Pon, 469 Mass. at 313 n.24, discussed infra.

the [judge] must balance the interest at stake." Defense counsel asserted that in Pon, 469 Mass. at 311, this court rejected the argument that the records of closed criminal proceedings resulting in an entry of nolle prosequi or dismissal are subject to a First Amendment presumption of public access. The judge responded that the relevant holding only applied to the nolle prosequi counts at issue.[6] Defense counsel went on to argue that the plain language of § 100C requires sealing for the counts on which the defendant was acquitted.

Discussing the factors in favor of sealing, the defendant pointed out that it had been about four years since the remaining counts had been nol prossed, and approximately six years since the defendant's release, with the defendant accumulating no new charges since then. He was aged forty-four at the time of the hearing, and he had no criminal record aside from the relevant charges and a dismissed charge of operating a motor vehicle with a suspended license. The defendant, although he has a job as a truck driver, has been unable to get better paying jobs as a result of his record in this case.[7] He

---

[6] The judge also noted that this court "defer[ed]" to Globe Newspaper Co. v. Pokaski, 868 F.2d 497, 509-511 (1st Cir. 1989) (Pokaski), and that this court "sa[id it is] going to be bound by [Pokaski]."

[7] The defendant applied for, but was denied employment at, among other places, a factory, an international airport as a maintenance staff member, and a driver for various rideshare

explained the stigma that he suffers as a result of these charges. The defendant acknowledged that the nature and reason of the disposition, particularly the nol prossed counts, may not weigh in his favor.[8] The judge asked counsel about the publicity surrounding the case. The defendant reported one article had appeared in a local newspaper in 2014 about the case. The Commonwealth noted that a news article about the case appeared as a top result when searching the defendant's name on the Internet.

The Commonwealth then summarized the facts of the case. After testifying in the case, the alleged victim, who suffered from substance use issues, relapsed as a result of the trauma from her testimony. The Commonwealth continued the case several times to "try[] to get her in a better position to be able to

---

companies. The defendant stated that the factory job demanded his passport, and his criminal record had to be clean. From a rideshare company, after he filled out an application, he received a notice that "there's something that's being presented that does not allow [him] to work."

[8] The judge stated, with respect to the deadlocked jury on the charges of

"rape with a firearm, robbery, armed and masked, and kidnapping with sexual assault, armed . . . , wouldn't the public want to [k]now, if those charges were . . . nol[] pros[s]ed after a jury deadlocked on the charges.

"This is not a conviction; I understand it is not a conviction, but it also is -- and there's some indication that somebody thought there was some validity to the charges, because the jury deadlocked."

testify, and ultimately, she wasn't." When another judge denied the Commonwealth's motion to use her previous trial testimony at the second trial, the Commonwealth had "no choice" but to file a nolle prosequi as to the remaining charges. The Commonwealth read a letter from the family of the alleged victim, who opposed the sealing of the defendant's record, which detailed the severe psychological distress and pain that she has suffered and continues to suffer as a result of the violent crimes committed against her.

On February 14, 2022, in a written decision, the judge denied the defendant's motion to seal his record in its entirety. The defendant appealed, and we allowed his application for direct appellate review.

Discussion. 1. Presumption of public access to criminal records for cases ending in findings of not guilty, a no bill by the grand jury, or a finding of no probable cause by the court. The defendant argues that by its terms, § 100C, first par., calls for automatic sealing with no court involvement unless the defendant requests otherwise as part of a fully integrated scheme enacted by the Legislature. He asserts that the 2010 reforms to the criminal offender record information (CORI) system reaffirmed the Legislature's commitment to the preexisting record sealing scheme, and that Pon removed any constitutional impediment to the Legislature's directive to

automatically seal closed cases ending in acquittal, as public access would not do much to ensure the integrity of criminal proceedings where there never was probable cause to bring the charges or where a jury acquitted a defendant. The defendant argues that the Legislature, in enacting § 100C, first par., unequivocally abrogated the common-law presumption of public access to judicial records.

The Commonwealth argues that the judge did not err in requiring the defendant to demonstrate that the value of sealing the records of his acquittals at trial clearly outweighs the constitutionally based value of the record remaining open to society where the Pon decision did not extend to § 100C, first par., and where Globe Newspaper Co. v. Pokaski, 868 F.2d 497, 509-511 (1st Cir. 1989), found a First Amendment presumption of access in criminal cases ending with findings of not guilty. The Commonwealth asserts that, in fact, the judge did apply the Pon analysis to the defendant's petition to seal the not guilty charges. Finally, the Commonwealth argues that because the entire criminal case did not result in a finding of not guilty (the defendant was only acquitted on three of the six indictments against him), the statutory language of § 100C, first par., does not apply to the defendant's acquittals.

Section 100C states, in relevant part:

> "In any criminal case wherein the defendant has been found not guilty by the court or jury, or a no bill has been returned by the grand jury, or a finding of no probable cause has been made by the court, the commissioner of probation [(commissioner)] shall seal said court appearance and disposition recorded in his files and the clerk and the probation officers of the courts in which the proceedings occurred or were initiated shall likewise seal the records of the proceedings in their files.  The provisions of this paragraph shall not apply if the defendant makes a written request to the commissioner not to seal the records of the proceedings.

> "In any criminal case wherein a nolle prosequi has been entered, or a dismissal has been entered by the court, and it appears to the court that substantial justice would best be served, the court shall direct the clerk to seal the records of the proceedings in his files.  The clerk shall forthwith notify the commissioner . . . and the probation officer of the courts in which the proceedings occurred or were initiated who shall likewise seal the records of the proceedings in their files."

G. L. c. 276, § 100C, first and second pars.

In Pokaski, 868 F.2d at 499, the decision relied on by the Commonwealth, the United States Court of Appeals for the First Circuit addressed whether there is a constitutional right of access to the records of cases sealed pursuant to § 100C.[9]  In

---

[9] Before the First Circuit addressed § 100C, this court discussed the statute in Commonwealth v. Vickey, 381 Mass. 762, 767 (1980) (declining to extend availability of sealing beyond named dispositions to pardon as no "strong demonstration of a legislative purpose not to limit the availability of sealing to the named dispositions" where they "are premised on a presumption of innocence").  The court focused on the named dispositions in § 100C -- not guilty, nolle prosequi, no bill, no probable cause, dismissal -- and their connection to a presumption of innocence in reasoning that there is a real need for the remedy of sealing.  Id. at 769.  In other words, the court's perspective was that a criminal defendant should not

discussing § 100C, first par., the First Circuit noted that where the defendant was found not guilty, a grand jury failed to indict, or the court made a finding of no probable cause, § 100C "provides for no court involvement; the sealing occurs automatically upon the completion of a criminal case ending in one of the above enumerated dispositions." Id. at 500. See Attorney Gen. v. District Attorney for the Plymouth Dist., 484 Mass. 260, 270 (2020) (commissioner "shall" seal court record where defendant found not guilty, no bill returned by grand jury, or finding of no probable cause made by court); Commonwealth v. Gavin G., 437 Mass. 470, 479 (2002) ("Under § 100C, an adult who is acquitted after trial, or as to whom the grand jury return a no bill or a court finds no probable cause, is entitled to immediate sealing"); Police Comm'r of Boston v. Municipal Court of the Dorchester Dist., 374 Mass. 640, 649 (1978) (§ 100C, as enacted by St. 1973, c. 322, "provides that probation records and court records must be sealed in criminal cases on the request of a defendant who has been found not guilty, as to whom no bill has been returned by the grand jury, or where there has been a finding of no probable cause by the court"); Commonwealth v. S.M.F., 40 Mass. App. Ct. 42, 44 (1996) (§ 100C, first par., "mandates" sealing). The second paragraph,

_____

suffer adverse consequences where no finding of guilt was entered.

for cases ending with a nolle prosequi or a dismissal, to the contrary, does not provide for "automatic" sealing. Pokaski, supra.

The First Circuit "has established a First Amendment right of access to records submitted in connection with criminal proceedings." Pokaski, 868 F.2d at 502. Underlying the determination that there exists a constitutionally secured right of access is the premise that the public should have a full understanding of the criminal proceeding to serve as a check on the judicial system. Id. After determining that the blanket prohibition on the disclosure of records mentioned by § 100C, first par., implicates the First Amendment, the First Circuit held that the automatic sealing of records of cases ending in a finding of not guilty or no probable cause could not withstand strict scrutiny and violated the First Amendment.[10] Id. at 505-509. Further, the First Circuit noted that cases ending in a finding of nolle prosequi or dismissal should be sealed "only where it is necessary to achieve a compelling interest." Id. at 510.

Subsequently, in Commonwealth v. Doe, 420 Mass. 142 (1995), overruled by Pon, 469 Mass. at 297, § 100C, second par., was at

---

[10] The First Circuit held that there is no First Amendment right of access to grand jury records where a grand jury refuses to indict. Pokaski, 868 F.2d at 509.

issue.[11]  The court recognized the First Circuit's conclusion in
Pokaski that there is a First Amendment right of access to
records submitted in connection with criminal proceedings, which
rendered § 100C, first par., unconstitutional.  Doe, supra at
147.  Under the second paragraph, adopting the constitutional
analysis set forth in Pokaski, the court held that the
"substantial justice" requirement in that paragraph would not be
met "unless it is demonstrated, first at [a] preliminary hearing
and, if the matter proceeds that far, at [a] final hearing, that
the value of sealing to the defendant clearly outweighs the
constitutionally-based value of the record remaining open to
society."  Id. at 151.  In making this determination, it would
be appropriate for a judge to consider the reason for the nolle
prosequi or dismissal and the specific harm the defendant risks
suffering if the record were to remain open to the public.  Id.
at 151-152.

In Pon, the most recent case discussing § 100C, the court
revisited the "stringent standard for discretionary sealing" set
out in Doe and articulated a new standard for sealing under
§ 100C, second par., which the court deemed necessary to achieve
the legislative intent.  Pon, 469 Mass. at 297, 300.  As a basis

---

[11] Nonetheless, the court indicated that sealing under
§ 100C, first par., "was to occur automatically on the
completion of a criminal case ending in one of the enumerated
dispositions."  Doe, 420 Mass. at 146-147.

for doing so, the court discussed the legislative history of §
100C and its counterparts, G. L. c. 276, §§ 100A and 100B.  Id.
at 301.

Section 100C was "introduced in the 1970s shortly after the
passage of the initial CORI Act . . . which authorized the
creation of a comprehensive criminal justice information system
that would afford limited access to court-based criminal
records."  Pon, 469 Mass. at 301.  See St. 1973, c. 322, § 1,
inserting G. L. c. 276, § 100C.  In 1983, the Legislature
amended the first paragraph to require that the commissioner
seal the relevant records, rather than sealing only on the
request of the defendant.  See St. 1983, c. 312.  In 1984, the
Legislature disposed of the requirement that the commissioner
notify the clerk and probation officers of the proceedings
before sealing the records associated with them.  St. 1984,
c. 123.

"In 2010, the Legislature enacted extensive reforms to the
CORI scheme, extending access to official CORI records to more
employers, housing providers, and other organizations, for
limited use, and simultaneously broadening the scope of the
sealing provisions to enable more individuals to shield their
records from public view."  Pon, 469 Mass. at 297.  As a part of
these changes, the Legislature deleted the phrase "except in
cases in which an order of probation has been terminated" from

the second paragraph, permitting the court to seal cases in which a defendant had received a continuance without a finding.[12] St. 2010, c. 256, § 131.

In enacting these statutes, the Legislature intended to balance several interests, including the public's interest in accessing certain types of records relating to criminal proceedings and a defendant's interest in sealing the record of his or her criminal history, "recognizing that ready access to a defendant's prior criminal record might frustrate a defendant's access to employment, housing, and social contacts necessary to . . . rehabilitation" (citation omitted). Pon, 469 Mass. at 301. In light of the changes made by the Legislature, the court concluded that the test in Doe "serves to frustrate rather than further the Legislature's purpose by imposing too high a burden of proof on the defendant." Id. at 308.

The court analyzed whether there is a First Amendment presumption of access to the records of criminal cases that have been dismissed or subject to nolle prosequi, and determined that

---

[12] Prior to the 2010 reforms, the second paragraph of § 100C began, "[i]n any criminal case wherein a nolle prosequi has been entered, or a dismissal has been entered by the court, except in cases in which an order of probation has been terminated." G. L. c. 276, § 100C, as amended through St. 1984, c. 123.

In 2018, the Legislature made changes to the fourth paragraph of the statute, which is not at issue in this opinion. See St. 2018, c. 69, §§ 193, 194.

there was not.  Pon, 469 Mass. at 308-309, 311.  Despite its overruling of Doe and its rejection of the First Amendment analysis in Pokaski with respect to the records mentioned in § 100C, second par., the court concluded in Pon that the records are subject to a common-law presumption of public access which may be restricted on a showing of "good cause" meriting sealing. Id. at 311-312.  In determining whether this standard is met, judges should balance a variety of interests, considering several factors discussed infra.  Id. at 314-319.  A judge no longer needs to go through a two-hearing process, but instead may conduct a single hearing on the merits once the judge decides that a prima facie showing has been made on the pleadings.  Id. at 321-322.  "After hearing the arguments and balancing the interests at stake, if the judge is satisfied that good cause merits sealing, the judge must make 'specific findings on the record setting forth the interests considered by the judge and the reasons for the order directing that such sealing occur.'"  Id. at 322, quoting Doe, 420 Mass. at 152-153.

Although Pon confined its holding to § 100C, second par., this court's reasoning supporting the conclusion that there is no First Amendment presumption of access to records of a criminal case ending in a nolle prosequi or a dismissal applies with equal force to records of a criminal case wherein the defendant has been found not guilty, where a no bill has been

returned by a grand jury, or where a finding of no probable cause has been made. As the United States Supreme Court has not yet addressed the First Amendment presumption of access as it applies to these records, we are not bound by the First Circuit's conclusion in Pokaski. Pon, 469 Mass. at 308, quoting Commonwealth v. Montanez, 388 Mass. 603, 604 (1983) ("we are not bound by decisions of Federal courts except the decisions of the United States Supreme Court on questions of Federal law").

Applying the two-step test set out in Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 8-9 (1986) (Press-Enterprise II), and examining the analysis conducted in Pon, it is clear that the court's reasoning in Pon supports the conclusion that there is no First Amendment presumption of access. The first step requires us to "consider[] whether the place and process have historically been open to the press and general public." Pon, 469 Mass. at 309, quoting Press-Enterprise II, supra at 8. "[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents. . . . It is uncontested, however, that the right to inspect and copy judicial records is not absolute" (footnote omitted). Nixon v. Warner Communications, Inc., 435 U.S. 589, 597-598 (1978).

Although court records historically have been accessible to citizens of the Commonwealth, the court long has recognized that

some classes of court records should not be available for public review, may be impounded on a showing of good cause, and may not be presumptively open for public view by operation of statute. Pon, 469 Mass. at 309. See New England Internet Café, LLC v. Clerk of the Superior Court for Criminal Business in Suffolk County, 462 Mass. 76, 90 (2012) (judge may seal documents on showing of good cause); Republican Co. v. Appeals Court, 442 Mass. 218, 222-223 (2004) ("Massachusetts has long recognized a common-law right of access to judicial records," but right of access may be restricted on showing of "good cause"); Roe v. Attorney Gen., 434 Mass. 418, 435 (2001) (records of conviction are public records constitutionally required to be public); Ottaway Newspapers, Inc. v. Appeals Court, 372 Mass. 539, 546 (1977) (acknowledging "general principle of publicity" while recognizing statutory limits on access to court proceedings and official records).

The sealing of criminal records pursuant to § 100C would not affect the public's ability to attend a criminal trial, or the media's right to report on court proceedings or publish truthful information relating to sealed proceedings. Pon, 469 Mass. at 310. "[Indeed,] the public had a right of access to any court record before, during, and for a period of time after the criminal trial [until the request for sealing was granted]." Id., quoting State ex rel. Cincinnati Enquirer v. Winkler, 101

Ohio St. 3d 382, 385 (2004). The court in Pon concluded that the records of closed cases resulting in a dismissal or nolle prosequi have not been open historically to the press and the public as have other "constitutionally cognizable elements of criminal proceedings." Pon, supra. For the same reasons, the records of closed cases that resulted in an acquittal after trial, a finding of no probable cause, or a no bill from the grand jury also have not been open historically to the press and public.

The second step requires the court to "consider 'whether public access plays a significant positive role in the functioning of the particular process in question.'" Pon, 469 Mass. at 310, quoting Press-Enterprise II, 478 U.S. at 8. The court concluded in Pon that "the availability of records of criminal cases that have been closed after nonconviction" does little to enhance the fairness and appearance of fairness of a criminal trial. Pon, supra. Recognizing that criminal justice agencies and several licensing commissions and other entities with a particular need for the information will retain access to sealed records, the court held that the integrity of the processes at issue are preserved sufficiently. Id. at 310-311. See G. L. c. 6, §§ 172-178B (discussing CORI access to various entities and related sections); G. L. c. 276, §§ 100A, 100B, 100D (sealing statutes).

Even more than criminal cases ending in a nolle prosequi or a dismissal, criminal charges ending in a finding of not guilty, no probable cause, or a no bill after grand jury proceedings are "premised on a presumption of innocence." Commonwealth v. Vickey, 381 Mass. 762, 767 (1980). See Police Comm'r of Boston, 374 Mass. at 657 ("The fact of an arrest without probable cause followed by total exoneration would seem to negate any possible value to law enforcement of an arrest record because the sum total of such an adjudication is that there was no evidence in any way connecting the defendant with participation in criminal activity"). Particularly where a jury found the defendant not guilty on particular charges against him and were deadlocked on the remaining charges, sealing the criminal records relating to those charges does not "truly impede" the public from ensuring that "the operations of government institutions [are] subject to effective public scrutiny," as the public and the media were free to attend the trial and hear the evidence against the defendant[13] (citation omitted). Pon, 469 Mass. at 310. See Nixon, 435 U.S. at 610 ("The requirement of a public trial is satisfied by the opportunity of members of the public and the press to attend the trial and to report what they have

_____

[13] Indeed, in the present case, the charges against the defendant were published by at least one local news service.

observed").  See also <u>Richmond Newspapers, Inc</u>. v. <u>Virginia</u>, 448 U.S. 555, 572-573 (1980) ("Instead of acquiring information about trials by firsthand observation or by word of mouth from those who attended, people now acquire it chiefly through the print and electronic media").  Therefore, the First Amendment presumption of access does not apply to nonconvictions mentioned in § 100C, first par.[14]

Although these records are not entitled to a First Amendment presumption of public access, they "are subject to a common-law presumption of public access."  <u>Pon</u>, 469 Mass. at 311.  "In interpreting a statute, we presume that when the Legislature enacts a law it is aware of the statutory and common law that governed the matter in which it legislates."  <u>Globe Newspaper Co., petitioner</u>, 461 Mass. 113, 117 (2011).  We review the interpretation of a statute de novo.  <u>Commonwealth</u> v. <u>K.W.</u>,

---

[14] Our conclusion is bolstered by the fact that numerous States have statutes commanding the automatic sealing of certain nonconvictions.  See Colo. Rev. Stat. § 24-72-705(1)(a), (a.5); Conn. Gen. Stat. § 54-142a(a), (b); Fla. Stat. § 943.0595(2)(a), (3)(a); Ga. Code Ann. § 35-3-37(h); Ky. Rev. Stat. Ann. § 431.076(1)(a); Mo. Rev. Stat. § 610.105(1); Neb. Rev. Stat. § 29-3523(3); N.H. Rev. Stat. Ann. § 651:5(II-a)(a); N.J. Rev. Stat. § 2C:52-6(a)(1); N.Y. Crim. Proc. Law § 160.50(1) (McKinney); 18 Pa. Cons. Stat. §§ 9121, 9122.2; R.I. Gen. Laws § 12-1-12.1; Utah Code Ann. § 77-40a-201(1)(a).  See also <u>State</u> v. <u>Apt</u>, 319 Conn. 494, 510 (2015); <u>Doe</u> v. <u>State</u>, 347 Ga. App. 246, 247 (2018), quoting Ga. Code Ann. § 35-3-37(a)(6); <u>State</u> v. <u>Coble</u>, 299 Neb. 434, 440 (2018); <u>State</u> v. <u>Williams</u>, 173 N.H. 540, 545 (2020); <u>People</u> v. <u>Anonymous</u>, 34 N.Y.3d 631, 637 (2020); <u>State</u> v. <u>Diamante</u>, 83 A.3d 546, 550-551 (R.I. 2014).

490 Mass. 619, 624 (2022). "Where the words [of a statute] are 'plain and unambiguous' in their meaning, we view them as 'conclusive as to legislative intent.'" Id., quoting Dorrian v. LVNV Funding, LLC, 479 Mass. 265, 271 (2018). "Where the words of the statute are ambiguous, we strive 'to make it an effectual piece of legislation in harmony with common sense and sound reason' and consistent with legislative intent." Pon, supra at 302, quoting Wolfe v. Gormally, 440 Mass. 699, 704 (2004).

"'Unless there is a violation of a constitutional guaranty, the Legislature may modify or abrogate common law practices' regarding public access to judicial records." Globe Newspaper Co., petitioner, 461 Mass. at 118, quoting New Bedford Standard-Times Publ. Co. v. Clerk of the Third Dist. Court of Bristol, 377 Mass. 404, 410 (1979). "[W]e do not interpret a statute to modify or abrogate an area traditionally guided by the common law, such as public access to judicial records, unless the intent to do so is clear." Globe Newspaper Co., petitioner, supra. See Chelsea Hous. Auth. v. McLaughlin, 482 Mass. 579, 590 (2019), quoting Riley v. Davison Constr. Co., 381 Mass. 432, 438 (1980) ("statute is not to be interpreted as effecting a material change in or a repeal of the common law unless the intent to do so is clearly expressed"). Where the common-law doctrine "'is so repugnant to and inconsistent with' the statute that 'both cannot stand,'" the statute preempts the common-law

doctrine by "necessary implication." Chelsea Hous. Auth., supra at 591, quoting George v. National Water Main Cleaning Co., 477 Mass. 371, 378 (2017).

The plain language of § 100C, first par., evidences the Legislature's clear intent to abrogate the common-law presumption of access to the nonconvictions explicitly referenced where it commands that "the commissioner . . . shall seal said court appearance and disposition recorded in his files" and the clerk and probation officers "shall likewise seal the records of the proceedings in their files," unless "the defendant makes a written request to the commissioner not to seal the records of the proceedings" (emphases added). G. L. c. 276, § 100C. See Johnson v. District Attorney for the N. Dist., 342 Mass. 212, 215 (1961) ("The word 'shall' in a statute is commonly a word of imperative obligation and is inconsistent with the idea of discretion").

Although the court need not do so where the language of the statute is unambiguous, going beyond the language, the intent of the Legislature supports such an interpretation. The 2010 reforms to the CORI scheme "strongly indicate that the Legislature was concerned with the collateral consequences of criminal records and sought to make sealing broadly available to individuals whose criminal histories or records no longer presented concerns of recidivism." Pon, 469 Mass. at 306.

"Overall, the legislative history unmistakably suggests that the Legislature's intent in enacting the 2010 reforms was to recalibrate the balance between protecting public safety and facilitating the reintegration of criminal defendants by removing barriers to housing and employment." Id. at 307. Even after Pon's invitation to the Legislature to "revisit[] the language of" § 100C, first par., in its 2018 reforms to the statute, the Legislature left the language alone. Id. at 313 n.24. See St. 2018, c. 69. We see this as a "clear" intent to abrogate the common-law right to public access to the nonconvictions at issue. Globe Newspaper Co., petitioner, 461 Mass. at 118.

We disagree with the Commonwealth's assertion that § 100C, first par., does not apply because the jury did not acquit the defendant on all six indictments. At the outset, the language of the statute commands sealing of "said court appearance and disposition" in "any criminal case wherein the defendant has been found not guilty[,] . . . a no bill has been returned by the grand jury, or a finding of no probable cause has been made by the court." G. L. c. 276, § 100C. This general language would seem to include favorable charges in cases where the defendant was acquitted on some charges, but not all. If the Legislature intended to limit sealing to cases where a defendant

is acquitted on all charges, it presumably would have said so.[15]
See Commonwealth v. Rossetti, 489 Mass. 589, 593 (2022), quoting
Commonwealth v. Williamson, 462 Mass. 676, 679 (2012) (we
"presume, as we must, that the Legislature intended what the
words of the statute say").  Contrast Colo. Rev. Stat. § 24-72-
705(1)(a)(II) (commanding sealing where "defendant is acquitted
of all counts in the case"); R.I. Gen. Laws § 12-1-12.1(b)
(court shall seal records of criminal case where person
acquitted of all counts in case); Utah Code Ann. § 77-40a-
201(1)(a) (automatic expungement of records in "case that
resulted in an acquittal on all charges"); State v. Diamante, 83
A.3d 546, 550-551 (R.I. 2014) (must be acquitted of "all
counts").  Further, even if the statutory language were
ambiguous, the legislative history, discussed supra, suggests
that the intent of the Legislature was to effectuate sealing in
a wider array of cases.  Interpreting the statute to require
sealing of the records related to any charge where the defendant

---

[15] Were we to adopt the Commonwealth's interpretation of the
statute, where a defendant is found not guilty on one charge,
but guilty on five other charges within the same case, the
language of the statute requiring sealing in "any criminal case
wherein the defendant has been found not guilty" would seem to
result in sealing of the records relating to all the charges,
including the convictions.  This would be nonsensical.  See
Commonwealth v. Peterson, 476 Mass. 163, 167 (2017), quoting
Commonwealth v. Parent, 465 Mass. 395, 409-410 (2013) ("we do
not adhere blindly to a literal reading of a statute if doing so
would yield an 'absurd' or 'illogical' result").

was found not guilty, a no bill was returned by the grand jury, or a finding of no probable cause was made would facilitate that intent.[16]

2. Standard of review. We review a judge's decision on a petition to seal a defendant's criminal record for an abuse of discretion. Pon, 469 Mass. at 299. "Under the abuse of discretion standard, the issue is whether the judge's decision resulted from 'a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives' (quotation and citation omitted)." Commonwealth v. Kolenovic, 471 Mass. 664, 672 (2015), S.C., 478 Mass. 189 (2017), quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). Where the judge's decision "is based in part on whether the judge made an error of law in interpreting the relevant statutes[,] we review the interpretation of [the] statute de novo." K.W., 490 Mass. at 624.

3. Denial of defendant's petition. a. Charges of which the defendant was found not guilty. As discussed supra, for

---

[16] We understand the judge's point that "sealing all court and probation records concerning the [n]ot [g]uilty [c]ounts in isolation would be an extremely difficult task." Nonetheless, this was the Legislature's clear intent in enacting the statute. Were there to be a case where some counts are sealed and some are not, we presume that redaction of information within the records would achieve the intended outcome.

closed criminal cases falling under the first paragraph of § 100C, sealing is mandatory.  With respect to the charges of which the defendant was found not guilty, the judge erred in failing to seal the records of these counts.

In his memorandum of decision on the defendant's petition to seal, the judge stated:  "Where the petitioner 'has been found not guilty by the court or jury, . . .' the petitioner must 'prove that the value of sealing . . . clearly outweighs the constitutionally-based value of the record remaining open to society.'  Pon, 469 Mass. at 312."[17]  He expressed that this court, in Pon, held "that, while the holding of Pokaski may apply to petitions to seal filed pursuant to the first paragraph of [§] 100C . . . it does not apply to petitions to seal filed pursuant to the second paragraph of [§] 100C."  Although he was correct to direct "[t]he intellectually inquisitive reader who wishes to fully understand the basis for the distinction" to Pon, supra at 313 n.24, the judge misinterpreted the court's directive.

In Pon, 469 Mass. at 313 n.24, the first paragraph of § 100C was "not at issue."  The court "decline[d] to extend [its] holding and the analysis [it] employ[ed] to [the first paragraph] of the statute."  Id.  It discussed the practice of

_____

[17] The judge also indicated this confusion at the motion hearing.

the District Court Department of the Trial Court to seal records of acquittals or where judges made a finding of no probable cause under the standard set out in Pokaski and reinforced by Doe. Id. The court stated:

> "[U]ntil the Legislature revisits the language of [§ 100C], first par., or until the issue of its interpretation comes before us, we observe that the solution adopted by the District Court is a reasonable one, as long as it is modified consistent with our holding in this case: that sealing may occur where good cause justifies the overriding of the general principle of publicity" (emphases added).

Id. Therefore, before our clarification in the present case, the judge should have applied the good cause standard to both the counts that resulted in verdicts of not guilty and the entry of a nolle prosequi. Now, however, it is clear that where a defendant stands acquitted on a charge (or a no bill is returned by the grand jury or a finding of no probable cause has been made by the court), the records pertaining to those charges should be sealed, unless the defendant "makes a written request to the commissioner" not to seal the records of the proceedings. G. L. c. 276, § 100C.

The defendant requests that, if this court "concludes that the judge did not abuse his discretion in denying the petition as to the dismissed counts," we should remand the entire petition, including the not guilty counts, to allow him to

decide how he would like to proceed.[18]  Because we remand the case for the judge to illustrate his reasoning underlying his findings on the nolle prosequi counts, infra, we remand the petition on the not guilty counts as well so that the defendant may clarify his intentions.  If he decides that he would like the records pertaining to his acquittals to remain open to the public, he should make this clear in the Superior Court, and he must make a written request to the commissioner not to seal such records.  G. L. c. 276, § 100C.

b.  Charges resulting in nolle prosequis.  As to the counts that resulted in nolle prosequis, the defendant argues that the judge purported to apply the correct standard, but misapplied it by making clear errors of fact and judgment in weighing the relevant factors.  More specifically, he argues that the judge failed to recognize that he was acquitted not only of carrying a firearm, but also of so much of the rape and robbery counts as alleged that he possessed a firearm; that the judge erred in his factual findings regarding the time elapsed since the trial and the nolle prosequis, which weighed heavily in his analysis; that the relevant time period to assess the defendant's "likelihood

---

[18] He admits that the judge's question "whether it would benefit [the defendant] to seal all court records pertaining to the [n]ot [g]uilty [c]ounts, while leaving the records pertaining to just the [n]olle [p]rosequi [c]ounts open to the public" has some force.

of recidivism or success" is the time elapsed since the defendant's release into the community, not the time since the charges were nol prossed; and that the judge failed to consider several highly pertinent factors, such as the extreme stigma attached to the charges, the defendant's age, and his lack of criminal history.  Last, the defendant asserts that any discussion of "rehabilitation" is improper where he never has been convicted of a crime, and the judge gave insufficient weight to the interests of the defendant and the Commonwealth in keeping the records private.

The Commonwealth argues that the judge properly considered all the factors set out in Pon.  For the reasons discussed infra, we remand the matter to the Superior Court for the judge to clarify his reasoning.

The second paragraph of § 100C states, in part:  "In any criminal case wherein a nolle prosequi has been entered, . . . and it appears to the court that substantial justice would best be served, the court shall direct the clerk to seal the records of the proceedings in his files."  G. L. c. 276, § 100C.  In demonstrating that "substantial justice [will] best be served," a "defendant must establish that good cause exists for sealing"; in other words, the reason for sealing "justifies the overriding of the general principle of publicity."  Pon, 469 Mass. at 312-313.  "Although a good cause analysis requires consideration of

similar factors as an analysis where the First Amendment is implicated, . . . the weight of the scales is more balanced, and the burden on the defendant is somewhat lessened." Id.

When assessing whether a defendant has met the "good cause" standard for sealing, a judge must balance the numerous interests at stake. Pon, 469 Mass. at 314. "If, after balancing those interests, the judge determines that the defendant has done so, the substantial justice standard will be satisfied." Id. In conducting this balancing test, a judge "should begin by recognizing the public interests at stake." Id. at 315.

Concomitant with the common-law presumption of access, the public has an interest in knowing about criminal charges so that it may hold the government accountable for the administration of justice. Pon, 469 Mass. at 315. On the other end of the spectrum, judges must acknowledge the interests of the Commonwealth and the defendant in keeping the information private. Id. "These interests include the compelling governmental interests in reducing recidivism, facilitating reintegration, and ensuring self-sufficiency by promoting employment and housing opportunities for former criminal defendants." Id. In balancing these interests, a judge may take judicial notice of the fact that the existence of a

criminal record may "present barriers to housing and employment opportunities." Id. at 316.

Although judges may consider any factors relevant to their weighing of the interests at stake, the court in Pon set out particularly relevant factors for a judge to consider, which the judge noted in his decision here, stating that he "considered" all the factors. The first factor to be considered focuses on "the disadvantages the defendant claims to face due to the availability of his . . . criminal record." Pon, 469 Mass. at 316. This may include any effect on the defendant's employment, housing, ability to participate in community or volunteer activities, ability to advance economically or professionally, and reliance on public assistance. Id. at 317.

The defendant, in his petition, identified the disadvantages that he suffers from as a result of his criminal record, including preclusion of further employment opportunities and better paying jobs.[19] In his decision, the judge recognized, in a sentence, that the defendant "undoubtedly" faces disadvantages as a result of the availability of his criminal record. Although it would have been better if the judge expanded on this with specific details from the defendant's

---

[19] At the hearing, the defendant expanded on particular employment opportunities of which he was deprived, alleging that these opportunities were withheld because of his record in this case.

case, it is implicit that the judge acknowledged the profound effect such serious charges on his record must have. On remand, we urge the judge to elaborate on these disadvantages in order to afford them the proper weight and assure the parties that the judge has considered the issue adequately.

The second factor to consider, as set out in Pon, is "evidence of rehabilitation." Pon, 469 Mass. at 317.

> "Employment attempts, community or civic engagement, successful completion of a probationary period or sobriety or mental health treatment, lack of further contact with the criminal justice system, or other accomplishments may weigh in favor of sealing by demonstrating that the defendant bears a low risk of recidivism and a likelihood of success in future employment."

Id. The defendant's argument that where he never has been convicted of a crime or admitted to sufficient facts for a finding of guilty, he should not be required to show "evidence of rehabilitation," is persuasive. Cf. Commonwealth v. Healy, 452 Mass. 510, 515 (2008) (in sentencing, "[j]udges may not punish the defendant for offenses of which he or she does not stand convicted in the particular case"); In re Kollman, 210 N.J. 557, 576 (2012) ("Facts related to an arrest that did not result in conviction, or to a dismissed charge, may . . . offer insight into an applicant's character and conduct. . . . To assess the public interest . . . courts [may] consider conduct before the time of conviction . . . [only so far as they are] established or undisputed facts, not unproven allegations").

Contrast Pon, 469 Mass. at 298 (defendant admitted to sufficient facts for guilty finding). The judge should have recognized this in his discussion of the factors.

Even if we were to assume that evidence of rehabilitation is applicable to the defendant, he demonstrated that he has taken a number of steps suggesting "rehabilitation," as it is defined in Pon. He had not faced any new criminal charges following the case at issue and, as of the date of the hearing, had remained free of charges for over five years since his release on bail in 2016.[20] Further, he had maintained employment since his release.

Aside from mentioning that the defendant "presented some 'evidence of rehabilitation,'" the judge discussed none of these factors. This was an abuse of discretion, requiring remand for the judge to expand on his consideration of all the relevant factors. On remand, we urge the judge to describe in detail his weighing of these positive factors in addition to those that he found weighed against sealing in order to illustrate the "balancing" test that Pon requires judges to conduct.

The third factor for the judge to consider is "other evidence on whether sealing [the records] would alleviate the

---

[20] Where we have not been alerted otherwise by the Commonwealth, it appears that the defendant now has gone over seven years without being charged with any new offenses.

identified disadvantages." Pon, 469 Mass. at 317. Some examples of such evidence may include the nature of the crimes with which the defendant was charged; the stigma associated with the charges; whether the defendant would pose an additional safety threat to the community were his or her record to be sealed; and whether the defendant maintains any sense of privacy, i.e., whether his or her charges were newsworthy to the extent that sealing would not provide a benefit. Id. at 317-318.

The judge indicated, in his written decision, that insufficient time had passed to determine whether the sealing of the defendant's record would pose an additional safety threat to the community. Nonetheless, the judge did not mention the stigma associated with the particularly abhorrent crimes with which the defendant was charged, nor did he discuss the publicity that the defendant's case received in the news. Although counsel mentioned these factors at the hearing, we cannot determine from the record whether the judge considered them or, if he did, what weight he gave them. It is necessary that the judge explicitly state for the record the factors he considered. To not do so, where they were relevant to the case and discussed at the hearing, was an abuse of discretion. See, e.g., Commonwealth v. Nash, 486 Mass. 394, 414 (2020) (single justice abused her discretion in assessment of security factors

when determining whether to grant motion for stay of sentence pending appeal, where her assessment was "underinclusive"); Commonwealth v. Grassie, 476 Mass. 202, 214-215 (2017), S.C., 482 Mass. 1017 (2019) ("there must be some mechanism by which an appellate court can meaningfully assess whether a judge acted appropriately in granting or denying [Mass. R. Crim. P. 25 (b) (2), as amended, 420 Mass. 1502 (1995)], relief. For instance, if a judge grants a motion to reduce a verdict, the expectation is that the judge will explain his or her reasoning in a written ruling or an oral explanation on the record"); L.L., 470 Mass. at 185 n.27 ("judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives" [citation omitted]).

Fourth, the judge should consider "the defendant's circumstances at the time of the offense." Pon, 469 Mass. at 318. This includes the defendant's age, insofar as it speaks to his capacity for rehabilitation, and his prior criminal history leading up to the offense. Id. As the defendant points out, the judge made no mention of the defendant's lack of a criminal record. Aside from a dismissal in 2012 on court costs of a charge of operating a motor vehicle with a suspended license, the defendant had no criminal record prior to the charges at

issue.  Where the defendant was aged forty-four at the time of his petition, his inexperience in the criminal justice system has some weight, deserving of mention in the judge's decision. See Doe, Sex Offender Registry Bd. No. 151564 v. Sex Offender Registry Bd., 456 Mass. 612, 621 (2010) (several scientific and statistical studies "conclude that age is an important factor in determining the risk of recidivism and that such risk diminishes significantly as an offender ages").

In discussing the fifth factor, "the passage of time since the date of the offense and the date of the dismissal or nolle prosequi," we note several factual errors.  Pon, 469 Mass. at 318.  The judge wrote that it had been "three years since the dismissal" of the counts in which a nolle prosequi was entered, and he indicated that the trial took place in December 2017, "less than five years ago."  In fact, at the time of the issuance of the judge's decision in February 2022, it had been nearly four years since the nolle prosequi issued, and the trial was conducted in December 2015, over six years prior.  We do not mean to suggest that it was improper for the judge to conclude that not enough time had passed from the date of the offense, trial, or nolle prosequi to merit sealing, and arguably the difference in the calculation of time is insignificant.  But where the judge made factual errors crucial to a factor that was a primary influence in his decision, we cannot determine whether

his conclusion would be the same were he to have referenced the correct time periods.[21]  On remand, the judge should address this.

As to the defendant's assertion that the "relevant timeframe [to consider] was the six years during which [he] had lived in the community without incident following his release from pretrial detention," Pon instructs that both "the passage of time since the date of the offense and the date of the dismissal or nolle prosequi" are important factors (emphases added).  Pon, 469 Mass. at 318.  Admitting that the passage of time since the defendant was in the community after he was charged with the offenses is relevant to "the risk of recidivism," the judge would not have abused his discretion if he had considered the correct period of time since his remaining charges were nol prossed:  almost four years at the issuance of his decision and over five years to date.  See id. ("If sealing is sought immediately following the disposition, there may be

---

[21] The judge indicated that the passage of time since dismissal of the nolle prosequi counts was insufficient for him to assess accurately the defendant's likelihood of recidivism and the additional safety threat sealing would pose.  He also indicated that a prospective employer might want to know that "less than five years ago," a "jury deadlocked over the question of whether [the defendant] had kidnapped, robbed, and raped a woman at gunpoint."  Further contributing to the error, the judge appeared to be incorrect about the "at gunpoint" comment: the parties agreed that the trial judge reduced the aggravated portion of the remaining rape count and ordered the firearm provision removed from the robbery count.

concerns that the public has not had sufficient opportunity for access, and that the defendant may be likely to reoffend").

Finally, the judge heavily relied on the sixth factor, "the nature of and reasons for the disposition," in coming to his conclusion to deny the defendant's petition to seal. Pon, 469 Mass. at 319. The judge stated:

> "The [c]ourt . . . strongly believes that the 'nature and reasons for the disposition' of the [n]olle [p]rosequi [c]ounts against [the defendant] constitutes information that the public has a 'general right to know.' Although [the defendant] is correct that the jury . . . 'did not find the allegations (of the [n]olle [p]rosequi [c]ounts) to be proven beyond a reasonable doubt' . . . neither did the jury exonerate him of those charges. Indeed, someone interested in [the defendant's] past -- including a prospective employer thinking of hiring [him] for a position that would bring him into frequent contact with members of the public -- might very well want to know that, less than five years ago, a . . . jury deadlocked over the question of whether [the defendant] had kidnapped, robbed, and raped a woman at gunpoint."

Aside from the factual error where the defendant was acquitted of the aggravating portion of the commission of his crimes at gunpoint, this factor undeniably is important. The particular reason for the nolle prosequis, that the victim relapsed and was unable to testify, does not speak to the defendant's innocence on the charges. See id. ("Defendants who were subject to wrongful accusations present the strongest case for sealing"). Despite his consideration of this relevant factor, where the judge failed to discuss all the factors mentioned supra in favor of the defendant and the Commonwealth's interests in keeping the

records private, we cannot be sure that he appropriately balanced the interests relevant to a reasoned determination whether "substantial justice would best be served" by sealing.

Conclusion.  We take no position on whether the defendant's record should be sealed on the counts in which the Commonwealth entered a nolle prosequi.  We remand for the purpose of allowing the judge to adequately address and illustrate all the relevant factors in his balancing of the various interests.  On remand, the defendant should clarify his position with respect to automatic sealing of the charges of which he was acquitted.  If he determines that he would prefer them to remain open to the public, he must make a written request to the commissioner not to seal those records.

So ordered.